UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MELINDA M. HUNT-RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case no. 4:16-CV-01505 PLC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Melinda Hunt-Ray seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits under the Social Security Act.[1] (ECF No. 21) Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

### I. Background and Procedural History

Plaintiff filed an application for Disability Insurance Benefits alleging she was disabled as of May 31, 2012 as a result of fibromyalgia and degenerative disc disease. (Tr. 81, 84.) The SSA denied Plaintiff's claims, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 91.) The SSA granted Plaintiff's request for review. An ALJ conducted a hearing on March 2015, at which Plaintiff testified. (Tr. 50-78) A few months later, the ALJ held a supplemental hearing and heard the testimony of a medical expert and a vocational expert. (Tr. 27-49)

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c). (ECF No. 12).

At the initial hearing, Plaintiff testified that she was thirty-six years old and last worked in May 2012 as an elementary school teacher. (Tr. 60.) She did not return to teaching after the summer break because she was "having a lot of leg pain," which made it "very painful for me to be up," and she was having difficulty sleeping. (Tr. 61-66) Plaintiff explained that her gynecologist attributed her symptoms to her endometriosis, and her primary care physician later diagnosed her with lupus, "which then turned out to be….fibromyalgia[.]" (Tr. 61, 64)

Plaintiff stated that her rheumatologist prescribed aqua therapy, which helped "slightly." (Tr. 65) Plaintiff rated her daily pain as 7 out of 10 with medication. (Tr. 66) Plaintiff tried to "do things around the house, but it's very…sporadic" as her pain and exhaustion required her to take frequent breaks. (Tr. 66-67) She explained that, she would rest for forty-five minutes to an hour at a time. (Tr. 67) Plaintiff could work on the computer or read for only short periods of time because she had difficulty concentrating. (Tr. 67-68, 73) In regard to medication, Plaintiff testified that she took hydrocodone as needed for endometriosis and Lyrica for fibromyalgia, both of which made her "woozy, drowsy." (Tr. 72-73)

Dr. Stephen Kaplan, a medical expert board-certified in internal medicine and rheumatology, testified at the second hearing. (Tr. 29-30) Based upon his review of Plaintiff's medical records, he noted that she was "a large individual, who…weighs in excess of 250 pounds." In October 2012, she presented to a rheumatologist, at the referral of her primary care physician, with "symptomology, primarily, of a chronic pain syndrome, associated with severe fatigue and headaches." (Tr. 32) Plaintiff visited "at least two prominent rheumatologists" who diagnosed her with fibromyalgia. (Tr. 33)

Dr. Kaplan believed that Plaintiff's impairment originated in October 2012 when she visited the first rheumatologist. (Tr. 37-38) Her most recent treatment notes from Washington

University suggested that "the symptoms are improving and she's doing well on therapy – on treatment." (Tr. 38)

Dr. Kaplan opined that individuals with fibromyalgia should "be limited to sedentary work…that they will have a low-stress environment, both physically and emotionally – and that they are limited to frequent use of the small muscles of the body in the upper extremities, such as the hands and the arms[.] (Tr. 34-35) When the ALJ asked Dr. Kaplan to clarify whether a "low-stress environment…would be inclusive of, for example. . . only occasional. . .workplace changes," Dr. Kaplan answered: "Well, you know, it's just that these people do well if they have very clear-cut, consistent instruction and work to do. . . then somebody who is on a very rigid – both time and, you know, decision making capacity." (Tr. 36) Dr. Kaplan added that "people with pain…should not be in a situation where the pain might be distracting. So they shouldn't be exposed to unprotected heights, no ladders, no climbing of ropes," "their posturals would be all limited to occasional," and "they would not be expected to…walk or stand more than, say, three hours a day." (Tr. 36-37) In response to questioning by Plaintiff's attorney, Dr. Kaplan stated that the amount of rest a person with fibromyalgia required depended upon that individual's tolerance. (Tr. 40-41)

Finally, a vocational expert testified that a person with Plaintiff's age, education, and work experience, who was limited to sedentary work with the additional limitations that she could "occasionally climb ramps and stairs, stoop, kneel, and crouch," "never climb ladders, ropes, scaffolds, or crawl," have "no exposure to hazards, such as unprotected heights and dangerous machinery," "frequently use her bilateral upper extremities for handling, fingering, and feeling," and only "perform[] simple, routine tasks in the low-stress work environment," could not work as an elementary school teacher. (Tr. 45-46). However, such an individual could

perform other unskilled jobs in the national economy, such as general clerk, information clerk, and document preparer. (Tr. 45-46.)

In a decision dated July 2015, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520(a) and found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 31, 2012, the alleged onset date, through December 31, 2012, the date last insured[.]" (Tr. 21) The ALJ found that Plaintiff had the severe impairment of fibromyalgia. (Tr. 13) Although the record contained evidence that Plaintiff was obese, suffered degenerative joint disease of the lumbar spine, and had a history of migraine headaches, the ALJ found no evidence of limitations resulting from those impairments. (Id.)

After reviewing Plaintiff's medical records and Plaintiff's and Dr. Kaplan's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms," but her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment and the objective medical evidence." (Tr. 15-16) The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> [S]he can occasionally climb ramps and stairs, stoop, kneel, and crouch; but she should never climb ropes, ladders or scaffolds, or crawl; she should have no exposure to hazards such as unprotected heights and dangerous machinery; she can frequently use her bilateral upper extremities for handling, fingering, and feeling. She is capable of simple, routine tasks, in a low stress work environment, which I define as one in which there are only occasional work place changes and only occasional decision-making required.

(Tr. 14) The ALJ concluded that Plaintiff could not perform her past relevant work, but she could perform other jobs that existed in significant numbers in the national economy and was, therefore, not disabled.

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-5) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a)).

## II. Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); see also Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010). "Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion.'" Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016)). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, as long as substantial evidence exists in the record to support the Commissioner's decision, the Court may not reverse merely because there is also substantial evidence detracting from the decision, or because the Court would have ruled otherwise. Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014); see also Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015). A court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting

5

Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III. Discussion

Plaintiff claims that substantial evidence did not support the ALJ's determination that she was not disabled between May 31, 2012 and December 31, 2012 because the ALJ failed to: (1) find her obesity was a severe impairment; (2) consider the medical expert's testimony regarding the need for a low-stress environment; and (3) properly weigh the treating physician's opinion. (ECF No. 21)  Defendant counters that the ALJ properly evaluated the severity of Plaintiff's impairments and determined Plaintiff's RFC.

*A. Obesity*

Plaintiff argues that the ALJ erred at step 2 in the sequential evaluation by failing to find that her obesity was a severe impairment.  More specifically, Plaintiff contends that the ALJ failed to consider the combined effects of obesity and fibromyalgia.  (ECF No. 21)  In response, Defendant asserts that the alleged error does not require remand because, in determining Plaintiff's RFC, the ALJ considered the combined effects of all of Plaintiff's impairments.  (ECF No. 26)

At step two of the sequential evaluation, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). See also 20 C.F.R. § 404.1520(a)(4)(ii). Obesity is a severe impairment "when, alone or in combination with another medically determinable impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . We will also consider the effects of any symptoms

6

(such as pain or fatigue) that could limit functioning." SSR 02-1p, 2002 WL 34686281, at *4 (Sept. 12, 2002). "[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis." Hankinson v. Colvin, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2018); see also 20 C.F.R. 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,'. . . when we assess your residual functional capacity.").

In her decision, the ALJ noted that Plaintiff was obese, but determined that obesity was not a severe impairment. (Tr. 13) The ALJ explained that Plaintiff's obesity did not significantly restrict her ability to work because Plaintiff "worked with that impairment for years as a school teacher without any noticeable impact on her ability to perform her work-related activities." (Id.)

Plaintiff challenges the ALJ's reasoning on the ground that Plaintiff did not suffer fibromyalgia when she worked as a teacher. According to Plaintiff, the ALJ "committed legal error by refusing to consider the combination of symptoms from obesity and [fibromyalgia] just because Plaintiff was able to work with the symptoms of obesity alone." (ECF No. 21 at 6)

The record reveals that Plaintiff did not allege obesity as a disabling condition in her application. See Zanzottera v. Colvin, No. 4:13-CV-1963-TIA, 2015 WL 402026, at *11 (Jan. 28, 2015). Additionally, while Plaintiff's treating physicians noted her weight, none of them imposed limitations on her ability to perform work-related functions resulting from her obesity. See McNamara v. Astrue, 590 F.3d 607, 611 (8th Cir. 2010); Forte v. Barnhart, 377 F.3d 892, 896-97 (8th Cir. 2004); McCallister v. Astrue, 2012 4257878, at *12 (E.D. Mo. 2012). Nor did

7

Plaintiff testify that her obesity imposed additional restrictions. See id. (the plaintiff's "failure to testify at her hearing before the ALJ about any work-related limitations caused by her obesity further undermines her claim."). Finally, Plaintiff does not identify how obesity would further limit her ability to perform a restricted range of sedentary work. Berry v. Astrue, 2012 WL 1565459, at *21 (W.D. Mo. 2012).

"Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." Zanzoterra, 2015 WL 402026, at *12 (quoting Kamman v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013)). For the reasons set forth above, Plaintiff failed to carry this burden. Given that neither the medical records nor Plaintiff's testimony demonstrated that her obesity significantly limited her ability to perform work-related functions, the ALJ's failure to include obesity as a severe impairment was not reversible error.

*B. Medical opinion evidence*

Plaintiff claims that the ALJ failed to properly consider testimony from the medical expert, Dr. Kaplan. (ECF No. 21) More specifically, Plaintiff asserts that the ALJ should have confirmed Dr. Kaplan's definition of "low-stress work environment," before finding that Plaintiff was capable of tolerating occasional workplace changes and making occasional decisions. Defendant counters that, because the ALJ is responsible for assessing a claimant's RFC based on the evidence in the record, it was not improper for the ALJ to formulate Plaintiff's RFC without Dr. Kaplan's clarification. (ECF No. 26)

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th

8

Cir. 2009) (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotations and citations omitted).

At the second administrative hearing, Dr. Kaplan testified generally to the residual functional capacity of individuals with fibromyalgia. (Tr. 29-37) For example, Dr. Kaplan opined that his "recommendation for these people is that they be limited to sedentary work situation," "a low-stress environment," "frequent use of the small muscles of the upper body," and standing or walking no more than three hours per day. (Tr. 35-37) In regard to a fibromyalgia patient's need for a low-stress environment, Dr. Kaplan testified as follows:

> Attorney: "And the low-stress environment – doctor, I guess, would that be inclusive of, for example – I'm just trying to categorize that – for example, only occasional, for example, workplace changes? Would that be something that would be low-stress, in your mind, or is that for me to define, I guess?
>
> Dr. Kaplan: Well, as I said – well, you know, it's just that these people do well if they have very clear-cut, consistent instruction and work to do —
>
> Attorney: Okay.
>
> Dr. Kaplan: -- then somebody who is on a very rigid – both time, and you, know decision making capacity.
>
> Attorney: Okay.
>
> Dr. Kaplan: So, that's why I'm using the term "low stress."

(Tr. 35-36).

In her decision, the ALJ did not specify the amount of weight given Dr. Kaplan's testimony, stating only that she gave his opinion "greater weight" than Dr. Ranganathan's. However, based on her RFC determination, it appears she credited his testimony regarding the

9

general capabilities of individuals with fibromyalgia. The ALJ adopted all of the physical limitations about which Dr. Kaplan testified, and included the following non-exertional limitations: "She is capable of simple, routine tasks, in a low stress work environment, which I define as one in which there are only occasional work place changes and only occasional decision-making required." (Tr. 14)

Plaintiff argues that Dr. Kaplan's testimony signified that people with fibromyalgia "cannot tolerate even occasional changes in the work setting or occasional decision-making because people with [fibromyalgia] are very rigid and need clear-cut and consistent work to do." Even assuming, *arguendo*, that Dr. Kaplan intended to limit Plaintiff to work environments with no workplace changes or decision-making, the ALJ did not err. As previously stated, an ALJ is not required to adopt all the limitations of any medical opinion. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ does not need to adopt entirety of a medical opinion); Castro v. Berryhill, No. No. 4:17-CV-2037-DDN, 2018 WL 3020207, at * 7 (E.D. Mo. June 18, 2018) (same).

Moreover, other portions of the ALJ's decision explain why she found that Plaintiff was not limited to work environments without any changes or decision-making requirements. The ALJ found that the "objective findings in the longitudinal medical record," including Plaintiff's reports to her treating physicians, showed Plaintiff's condition improved with medication. Additionally, Plaintiff's mental status examinations were consistently normal and, in her self-assessments of October 2013 and January 2015, she stated that she could handle feelings of anxiety, nervousness, and/or depression "with some difficulty." This evidence suggests that Plaintiff's fibromyalgia did not affect her mental RFC so significantly that she could not handle any workplace changes or decision-making. Accordingly, the ALJ did not err by including in

Plaintiff's RFC the ability to work in a low-stress environment with occasional changes and decision-making.

*C. Treating physician*

Finally, Plaintiff argues that the ALJ erred in assigning less than significant weight to the opinion of Plaintiff's treating rheumatologist, Dr. Ranganathan, and failing to provide "good reasons" for doing so. (ECF No. 21) In response, Defendant asserts that the ALJ properly weighed Dr. Ranganathan's opinion.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Id. (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)). See also Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

A review of the records reveals that Dr. Ranganathan began treating Plaintiff in February 2013, approximately two months after her December 2012 date last insured. (Tr. 394) At that appointment, Plaintiff complained of "bilateral hip pain," "pain in both knees and wrists," "diffuse muscle pain and stiffness in her thighs and legs, upper mid and low back," and "fatigue and poor sleep at night." (Id.) Dr. Ranganathan observed that Plaintiff had a full range of

motion in all joints and her muscle strength was 5 out of 5 "proximally and distally upper and lower extremities." (Id.) At her follow-up appointment in June 2013, Plaintiff reported no improvement with cyclobenzaprine, so Dr. Ranganathan prescribed gabapentin. (Tr. 393)

In September 2013, Dr. Ranganathan prescribed Lyrica and, at her next appointment in October 2013, Plaintiff reported "relief of myalgias."[2] (Tr. 510) When Plaintiff followed up with Dr. Ranganathan in April 2014 and September 2014, she reported "significant relief of myalgias" with Lyrica. (Tr. 506, 508) In January 2015, Plaintiff complained of increased fibromyalgia symptoms since late November 2014, and Dr. Ranganathan increased Plaintiff's Lyrica dosage. (Tr. 504)

Dr. Ranganathan completed a medical source statement (MSS) for Plaintiff in March 2015, more than two years after her date last insured. (Tr. 524-25) In the MSS, Dr. Ranganathan opined that Plaintiff's current symptoms, specifically muscle pain, would preclude her from maintaining full-time employment. (Tr. 524) Dr. Ranganathan stated that Plaintiff could never: lift/carry any weight; stand, walk, or sit; or climb, balance, stoop, crouch, kneel, or crawl. (Tr. 525) Dr. Rangathan also found that Plaintiff was restricted in her abilities to reach, handle, finger, feel, pull/pull, see, hear, and speak. (Id.) However, in his treatment notes from a visit less than two weeks later, Dr. Ranganathan wrote that Plaintiff "feels her symptoms from fibromyalgia…have improved" since January 2015. (Tr. 543)

---

[2] Plaintiff completed a self-assessment the same day, in which she stated that she could perform the following tasks "without any difficulty": dress herself, including tying shoelaces and doing buttons; lift a cup or glass to her mouth; wash and dry her body; and bend down to pick up clothing from the floor. (Tr. 519). With "some difficulty," Plaintiff could: get in and out of bed, walk outdoors on flat ground; get in and out of a car, bus, train, or airplane; get a good night sleep; and deal with feelings of anxiety and depression. (Id.) The only activities Plaintiff was unable to do were walk two miles and participate in recreational activities and sports. (Id.)

The ALJ assigned Dr. Ranganathan's MSS "very little weight." (Tr. 19) The ALJ explained that Dr. Ranganathan's MSS "describes an individual who should, in essence, be bedridden and inconsistent with the daily living and other activities in which the claimant continues to engage." (Id.) Additionally, the ALJ found that Dr. Ranganathan's medical opinion was "not logically supported by his own records reporting improvement in functioning." (Id.)

"A treating physician's opinion is not automatically controlling and may be discredited when other medical opinions are supported by better medical evidence or when the physician gives inconsistent opinions." Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (internal citations omitted). In this case, the ALJ found that Dr. Ranganathan's treatment notes did not support the extreme functional limitations identified in his MSS. Despite stating in the MSS that Plaintiff was incapable of all physical or postural activities, Dr. Ranganthan's treatment notes reflected that Plaintiff's condition improved in September 2013, April 2014, September 2014, and March 2015. Dr. Ranganathan consistently observed that Plaintiff had a full range of motion in all joints and never noted any physical limitations. Upon review of the record, the Court finds that the ALJ properly evaluated Plaintiff's and provided "good reasons" for assigning it little weight.

## D. Conclusion

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_/s/ Patricia L. Cohen_
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of September, 2018